Good afternoon or good morning if any of you are in California and welcome. We are going to have argument in Baha Ali et al versus Valeant Pharmaceuticals. Who will speak for the plaintiffs and the plaintiff appellants in the first instance? Good afternoon, Your Honor. My name is Hung Ta. It's my privilege to represent the plaintiffs appellants and I'd like to reserve two minutes for rebuttal, please. Two minutes it is, sir. And go ahead if you will. Good afternoon, Your Honors. The primary question on this appeal and the one which I would devote most of my time to is whether the equitable tolling rule in American pipe is restricted only to putative class members who opt out after a class certification decision. There are at least three principal reasons why the Third Circuit should follow the Second, the Ninth and the Tenth Circuits and not introduce such a restriction. The first reason is that nothing about the way that the rule works requires that there be a class certification decision in order to trigger the rule. Under the equitable tolling rule in American pipe, it is the commencement of the class action that is deemed to commence the action for all putative class members and then thereafter all class members or putative class members stand as parties to the action and the claims are deemed to be timely imposed. So no further step is required such as a class certification decision to trigger the operation of the rule. In all of its subsequent decisions, the U.S. Supreme Court has indicated that that's exactly how the rule works. For example, in Crown Court Concealed, the Supreme Court repeated the statement that the commencement of the class action commences the action on behalf of all class members. And then it said this, it said, and I quote, it's at 353 to 354 of the decision, the Supreme Court says, once the statute of limitations has been told, it remains told for all members of the putative class until class certification is denied. In other words, once American pipe is triggered upon the filing of the class action, it stays like that. All class members claims are told and the class certification decision is therefore the endpoint for the operation of American pipe. The appellees instead are arguing that the class certification decision is the beginning of the right to. Let me ask you a question then. If I understand you and your understanding of American pipe as it applies to your client, I take it that the following proposition would be true. And that is that an individual could assert a claim from the moment of the wrongdoing, whenever that was, until two years after the denial of the class certification, that any claim brought by an individual at any time in that continuum would be timely. Is that correct? That is mostly correct, your honor. The only- What period of time could an individual in the continuum I've just described, not be able to file a claim? In this situation, your honor, for example, if the class action was commenced, say one year and 360 days after the cause of action accrued, right? So there'll be only five days left on the statute of limitations. So when the class certification decision is issued denying class certification, there would only be five days left for an individual to file a claim. That is generally correct, but we have to take into account that there may have been a lapse of time between the filing of the class action and the accrual of the cause of action. Right. So that would only affect the time that an individual could file after the denial of class certification. Correct, your honor. And it would be limited to five days? It would be limited to the amount of time that is left. So effectively, American Pipe tolls the statute of limitations for the period that the class action- for the period between the commencement of the class action and the certification of- or denial of certification of a class. So if that period was a year, that means there's only a year left on the statute of limitations. Well, so why should we limit American Pipe to the fact set forth in the Supreme Court's recent decisions in AMX and China Agritech? Yes, your honor. Those- it really- those decisions don't address this issue. And it's surprising to us that appellees would cite those decisions as supporting that proposition, that it's only after class certification decision that individuals can opt out. If you look at the- those two cases, it's clear, very clear, that they did not intend to impose such a restriction. If you look at, for example, ANZ Securities, in ANZ Securities, the plaintiff indeed was a plaintiff who opted out prior to class certification. And the plaintiff filed its action within- and needed to rely on American Pipe tolerance. But the issue before the Supreme Court in ANZ Securities was the statute of repose. And the Supreme Court could have easily dismissed the action based on the fact that the plaintiff had tried to opt out pre-class certification, but the Supreme Court didn't. In fact, the Supreme Court said if it hadn't been for the ANZ Securities, and the appellees never grasped with that central fact. Well, we're going to grapple with AZN in a moment. But the question I have for you is China Agritech is focused on the class certification determination, as is American Pipe. But my question is this, as we look at that continuum that I asked you about, China Agritech doesn't speak, there's an argument to be made, to the period of time that your client falls within, right? So outside of the two-year statute of limitations, tell me, why should we essentially extend that notion of a statute? If I understand you correctly, there really is no statute of limitations based on American Pipe, because an individual can file at any time from the wrongdoing post, and I understand the date could change specifically, depending on the case, but essentially until post-denial of class certification. That doesn't speak to the issues of judicial economy that the American Pipe Court spoke to, and the China Agritech Court spoke to. Help me understand why there would be this continuum with essentially no statute of limitations. Well, first of all, Your Honor, I think with respect, it's inaccurate to say that there is essentially no statute of limitations. So just say the cause of action accrues on X date, and then a class action is commenced only a year after the cause of action accrues. That means a year of the statute of limitations has expired under the two-year statute of limitations in this case. That means that a plaintiff therefore only has a year left. So the minute the class certification decision is issued, and for example, a class is not certified, that plaintiff then only has a year left to file its action. So it's not unlimited. The statute of limitations runs, but for the duration of the class action from commencement through the class certification decision, the statute of limitations is suspended, but only for that type of period. With respect to the question of judicial economy and efficiency, Your Honor, I think it's clear if you look at this case, for example, that judicial efficiency and economy would not be furthered by imposing a restriction on only post-class certification situations. And this is the reason. During the period that the class certification decision is pending, the claims of plaintiffs may actually be expiring due to the statute of repose. The Supreme Court has made it clear that the statute of repose is not told. And so if plaintiffs are aware that their claims may be expiring, they may be forced to file protective lawsuits. And this was exactly the risk that the 10th Circuit said in State Farm was one of the reasons why it would not further judicial efficiency to force plaintiffs to file protective lawsuits. And this is not just a hypothetical possibility, Your Honor. It's a real possibility. In this case, for example, the misstatements and omissions that are the basis of the Section 10b Exchange Act claims run from the period 2013 to 2016. It's now 2020. According to the appellees, there is still not a class certification decision. So all of the class's claims from 2013 to 2015 have already expired and are continuing to expire pending the court's class certification decision. So when would the statute of repose, when should we consider the date that the statute of repose would inject itself into this case? It already has injected itself, Your Honor. So what's the date? So the very last misstatement and omission is in 2016. That's the class period, 2013 through 2016. All these misstatements and omissions from 2013 through 2015, October 2015, they've already all expired under the statute of repose. And so every day that's ticking by, while the appellees are arguing that the court still has not issued a class certification decision, all the remaining claims are ticking away. And then by 2021, all claims would have expired under the statute of repose. And if there's still no class certification decision, you're going to effectively have plaintiffs who are unable to opt out because there's no class certification decision, according to the appellees, yet all their claims have expired under the statute of repose. And there's another aspect to judicial efficiency in economy, Your Honors. Even if there were to be a class certification decision immediately, what would effectively happen is that there would be like multiple tracks of litigation. In the underlying litigation, there's still the class action, which hasn't settled completely. There are the opt-outs who did file early without relying on American Pipe, and they've been going on through discovery now for several years, and depositions are scheduled to start in November. So that's a second track of litigation. And then if you have those opt-outs who are allowed to opt out only after class certification decision, now you've got three tracks of litigation. And we would submit, Your Honors, that that could hardly be further in judicial economy to have a district court deal with three distinct tracks of litigation. That was effectively going to be my second reason for why the court should follow the second nine to 10 circuits. And if I can just quickly touch on the third reason. The third reason is, of course- One moment, one moment. Judge Fuentes, I thought you were about to come in with a question, sir. No, I think it's been answered. Thank you. Judge Cowan, anything at the moment? No, not really. Okay, thank you. Go ahead then, Mr. Tan. And so the third reason, Your Honors, for not restricting American Pipe is if you look at the majority of circuits, the majority of circuits have held unequivocally that imposing a restriction on American Pipe to the post-class certification situation would be inconsistent with how the equitable tolling rule works. And really, although the appellees argue that there is a major raging debate amongst the circuits about this issue, there really isn't. The sixth circuit is the only circuit that has said that there should be a restriction to post-class certification opt-outs. And even the sixth circuit in a subsequent decision in Stein has now said that it has doubts about its prior decision in Weiser Pratt. And then, in fact, now district courts within the sixth circuit have, based on these doubts expressed by the sixth circuit, they've started declining to apply that restriction. I know the appellees have argued that the first circuit also has held that there should be a restriction, but it hasn't. The first circuit decision in Glader has nothing to do with the statute of limitations and the tolling of the statute of limitations. That case concerned personal jurisdiction, and what happened in that case- For your counsel. There's a question for your counsel. Go ahead, Judge. Is that Bob or me? You, please. Okay. I do, yeah. Is it really true that there would be no prejudice to Valiant if we were to I mean, would they be forced to litigate identical claims that rehash the same issues beyond the limitation period? How is that not prejudicial? Well, your Honor, the answer to that question is simply the prejudice comes from whether they would be required to litigate claims of which they had no notice. And what American Pipe makes clear, and what the Second, Ninth, and Tenth Circuits have all said, is that when it comes to notice, the actual filing of the class action gives notice to the defendant as to the universe of claims that it is subject to. And it doesn't matter, and this is what the court said in American Pipe. It doesn't matter whether the litigation against the defendant ends up being an individual lawsuit, a class action, or multiple forums. It just doesn't matter. The point is they've been given notice. And to allow an individual to file an opt-out lawsuit, even pre-class certification, would not give a defendant any less notice. It would not create any more surprise. The fact is that the class action, the commencement of that class action, gives the defendants all the notice that it requires, and therefore it cannot possibly be prejudiced. What about judicial economy? As I said before, Your Honor, in terms of judicial economy, it would not reduce the number of lawsuits if you were to impose a post-class certification decision restriction. And this is explained actually very well by the Tenth Circuit in the State Farm decision. In State Farm, the Tenth Circuit said, look, anyone with substantive claims, substantial claims, and they wanted to file as an opt-out. So that would not be affected. With respect to the plaintiffs who file a bit later and require the invocation of American Pipe tolling, the Tenth Circuit said, well, if you restrict them and prevent them from filing until post-class certification, that's exactly what they'll do. They'll file post-class certification. So you don't reduce the number of lawsuits. All you've done is you've deferred the lawsuit from early in the calendar on the court's calendar to later on the court's calendar. And I would refer, Your Honor, to the discussion by the Tenth Circuit in State Farm because it explains it pretty well. So to go back to the point of judicial efficiency and economy, we would say, first, the number of lawsuits would not be reduced. But in fact, to protect themselves, plaintiffs may have to file even more lawsuits to protect themselves against the running of the statute reposed. So it would have the opposite effect. And again, the State, the Tenth Circuit in State Farm explains it very well, that you wouldn't reduce the number of lawsuits. In fact, you would increase the number of protective lawsuits being filed. Okay, thank you. Judge Fuente or Judge Allen? Yeah, one last thought here. The appellants filed their complaint here on December the 18th, 2018. That was more than two years after the class action complaint was filed. Why isn't that too late, as the district court held? Yes, and that's the second issue on appeal, Your Honor. We would say this on the question of when the statute of limitations started to accrue. The district court held, essentially, that because the class action complaint was filed in June, 2016, that means automatically that a reasonably diligent plaintiff would have, quote unquote, discovered the facts of its claims in June, 2016. And that's directly contrary to what this court held in Pension Trust. In Pension Trust, the court explained that now with the Merck standard applied by the Supreme Court, the filing, it's not inquiry notice, but it's the point of discovery is when the statute of limitations starts to run. And in Merck and in Pension Trust, the courts both said that the filing of a class action complaint triggers the duty to inquire. So at that point, in June, 2016, a plaintiff, a reasonably diligent plaintiff, would have been on notice of the duty to inquire and investigate. But what this court held, the district court held in this case, was that no, the filing of the class action complaint actually was the point of discovery. And we just think that that is, as a matter of law, incorrect. The district court misapplied Pension Trust. And the point of discovery had to be some point subsequent to the filing of the consolidated class action complaint. Our lawsuit was filed approximately six months after the filing of the consolidated class action. I'm sorry, it was filed two years and six months after the filing of the consolidated class action complaint. And in our view, there was no discovery until well after the date that we filed our individual complaint. What's the reason for you to be in that instance six months later? You had three other cases that were filed within the two-year statute of limitations. Well, again, Your Honor, you have the filing of a complaint doesn't constitute the point of discovery. That's very clear from Pension Trust. It's also clear from Merck. The filing of a complaint, which are essentially allegations, right? They aren't facts. They're not proven facts. They're essentially allegations. It only triggers a duty to inquire. And so what we're alleging here is that, as is usually the situation in the class action, you have a whole bunch of different plaintiffs coming out to file complaints. It was only in June 2016 that a consolidated complaint was filed. And at that point, that triggers the duty to inquire. It's not the point of discovery. And I understand that there may have been other cases that were filed, but under the Merck standard, under the Pension Trust standard, those can't be deemed to be the point of discovery. We're now bound by Pension Trust, right? Yeah, but it's controlling law in this circuit, Your Honor, because in Pension Trust, this court held that the filing of a state action, class action complaint, was the point in time when a plaintiff, a reasonably diligent plaintiff, should have started inquiring. And here, the district court held totally differently, applied as a matter of law, the principle that the minute the class action complaint was filed, that itself was the point of discovery. And we think that that's incorrect. But what's the beginning date? The specific beginning date that we should apply? Well, the answer to that question, Your Honor, it's really not our burden as the plaintiff to set a beginning date. It's the defendant's burden. No, no, no. I want to know what... You obviously are operating under the understanding that there is a particular date that you have in mind, and that's why when you filed in December of 18, it was timely. Correct, Your Honor. I want to know what is that date that you have in mind? The date that we have in mind, Your Honor, is that the earliest the plaintiff would have, quote unquote, discovered the facts of... A reasonably diligent plaintiff would have discovered the facts of its claims would have been April 2017, when the district court issued its motion to dismiss opinion. Okay. So if we disagree with that, then you would be deemed out of time? Right. Only we would be deemed out of time if the point of discovery is held by this court to be some point before December 2000, two years before 2016, 2018. No, I haven't. Anything further, Judges Fuentes or Cowan? I'm fine, thank you. I have nothing further. Okay. Thank you, counsel. I think we can get on this. We're going to hear from, I guess, Appellee and then Amicus, or... Your Honor, this is Michael Hampson from Ronit Kramer-Sedighi for Amicus. I defer to Mr. Waldman, but my assumption had been that I would go on the back of the appellant, and then he would have a chance to respond to both. And that he would... What? I didn't hear you. He would have the opportunity to respond to my argument, which are in favor of the appellant. Okay. Very good. And I've only been allocated two minutes, Your Honor, so I will be quick. Well, then jump on it then. So the district court stated that its decision would promote judicial autonomy by encouraging investors to wait for class certification. And this is a point that Mr. Ang Tha raised in his argument, but what we provided the court with is some empirical data that really brings the point home. And the problem with the district court's reasoning is that it ignores that by the class certification stage, the five-year statute of repose often will have expired. We conducted analysis of public available court data concerning federal securities class actions filed between 2010 and 2015. For each case, we looked at the start date of the class period, the end date of the class period, and the date on which class certification was denied. And what we found was at least 92 cases where class certification was not decided until at least five years after the beginning of the class period. So in those cases, if the district court's ruling had applied, at least some of the class members would have had their individual claims barred by the statute of repose. Fabulous point. Fabulous point. How do you meld that? How do you handle ANZ Securities, or ANZ, I guess it is, which says you can't extend American pipe beyond the statute of repose? How do you work through that? That's precisely my point, right, is that we have to file prior to the statute of repose, but there are certain investors who rely on the tolling of the statute of the limitations through American pipe, deciding whether it would be prudent to file their own opt-out actions. And so if the benefit of American pipe tolling is taken away from those investors, then they will have to file prophylactic lawsuits much earlier in cases where perhaps they wouldn't have filed their own individual opt-outs. And indeed, we found 14 federal class actions where the statute of repose would have expired entirely under the ANZ case at the time of class certification. And so the upshot of this is that investors rely on class tolling in deciding whether to make the decision to opt out of cases. There are certain things that happen in the class action that occur typically more than two years after of discovery of the Those things may include how the class is shaped via the motion to dismiss, what claims survive, how big the class is, and the time periods during the class. And what would happen, we submit, Your Honor, took away the benefit of class tolling the pre-certification opt-out is that you would have a flood of prophylactic filings that would be way more substantial than perhaps the prophylactic filings that have to be made now under the existing law under ANZ. All right. Well, thanks very much. Judges Cowan and Fuentes, do you have anything for Amicus? Oh, I have no questions. Yeah, at its core, is an American pipe an equitable document designed to prevent injustice to plaintiffs? I mean, is it really a rule that exists for the court's benefit in reducing duplicate filings, as your briefing suggests? I think it has a dual purpose. One is to prevent injustice so that plaintiffs who don't have notice of a class action can rely on the class action vehicle to file timely claims. But I think several courts have held that it does have a court-administrated process, and that is to ensure the efficiency of, rather, it's to make sure that there are not a flood of premature prophylactic placeholder individual lawsuits filed. And instead, those plaintiffs can rely on class action tolling. So I believe, Your Honor, it does have that dual aspect to it. All right. Thank you, Counsel. Let's hear from appellees, please. Good afternoon, Your Honors. May it please the court, my name is Craig Waldman, and I'll be arguing on behalf of the defendant appellees today. As Mr. Ta described, this appeal is about whether the district court erred in holding that appellant's complaint was untimely. And there are, as Mr. Ta said, two key issues here. First, whether the equitable tolling ruling set forth in American Pipe should apply to the individual action commenced here by a putative class member before a decision on class cert is rendered. And second, whether the appellant's complaint was timely without the benefit of American Pipe tolling. With the court's indulgence, I would begin with just a brief procedural background that was relevant to the district court's decision, in which I believe shows why American Pipe tolling isn't appropriate in this case. And I would then turn to the American Pipe doctrine itself, including the two recent Supreme Court cases that Mr. Ta and the panel have addressed, and the policy considerations examined by the district court and by the amici. And then finally, just very briefly, I would touch on the appellant's argument, which he has raised for the first time on this appeal, that the complaint is timely, even without American Pipe tolling. As for the background, Your Honors, the putative class action was filed against Valiant on October 22, 2015, and the consolidated class action was filed on June 24, 2016. These actions, these class actions and the alleged conduct that triggered them were widely covered by the media in 2015 and 2016, including multiple reports in the Wall Street Journal, Bloomberg, and the New York Times. On September 13, 2016, the defendants filed a motion to dismiss, and the district court largely denied that in April of 2017. The appellants don't contest that their action is duplicative of the class action, that it's premised on the same alleged wrongful conduct, or that it often copies verbatim from the consolidated class action complaint. At the same time, 37 individual opt-out actions, including this one, followed the filing of the class complaint. Like the class action complaint, these 37 opt-outs principally assert 10B claims, which are subject to the two-year discovery-based statute of limitations and a five-year statute of repose. Of those 37 individual opt-out cases, 29 were filed prior to June 24, 2018, which is two years after the filing of the consolidated class complaint. The district court has ruled at the motion to dismiss stage that those are timely. Five additional opt-outs were subject to tolling agreements. That's 34 of the 37. Notably, as the panel is aware, Appellants Council filed two of those 34 actions, Ahuja and Colonial, before June 24, 2018. The earliest of those complaints by Appellants Council was filed on January 10, 2018, which is 11 months prior to this action. The district court dealt with the three actions that were filed after June 24, 2018, in three separate opinions, and all of those opinions are in the joint appendix that's before this panel. In the Catalyst case... I have a question for you, counsel, that arises from the distinction that you're attempting to draw, okay? So, bear with me for the following hypothetical. We have three plaintiffs, right? Plaintiff number one files his claim within two years of the statute of limitations. Plaintiff number two files an individual claim after the two-year statute of limitations, but before the district court rules on class certification. And plaintiff number three files an opt-out claim after the district court grants class certification. My question is, does China Agritech mandate that we treat each of these plaintiffs the same? No, your honor. I think, I believe you would treat these plaintiffs differently. Plaintiff number one, who filed within two years of the statute of limitations, doesn't have a statute of limitations problem. That is most, at least as the district court held on a motion to dismiss, that's most of the opt-outs filed here. After two years, but before a class certification decision, that plaintiff is time-barred because they don't get the benefit under the recent Supreme Court cases or American tolling, or American pipe of tolling. Then the question would be. I have, I want you to help me. Why should we draw a distinction or believe that the court was speaking of a distinction between the, what I will call plaintiff number two and plaintiff number three. If I'm plaintiff number three, I, I, I acknowledge when the wrongdoing happened. I acknowledge that it happened over a period of time. I acknowledge that I could have brought a claim within the first two years. I chose not to. I acknowledge that it's possible that I could have brought a plane, a claim between two years after the statute of limitation is run, say two years in a day until the class certification decision. So that plaintiff, plaintiff number three in my hypothetical has basically just sat on the sidelines and watched at least plaintiff number two has said, lots of things are happening. I've got a file and they file. So why should there be prejudice against plaintiff number two in this hypothetical, as opposed to given the iterations that China agri-tech enunciated. Your honor, a couple of responses to that with respect to the prejudice to plaintiff number two, plaintiff number two had a lot of options that he or she, or it chose not to avail itself. So it's not prejudiced. It just made a decision not to file within the two years and then not to wait until after a class cert decision. Plaintiff number three, I think the Supreme court recognizes may never file a suit. And that's why the judicial economy and efficiency is important. Plaintiff number three is doing what the Supreme court is encouraged waiting to see what happens with the class certification decision. It may be that plaintiff number three sees the class gets certified and chooses not to file a complaint, thereby reducing the burdens on the court, also reducing the burdens on the, on the litigants. So number three is more certainly more efficient than, than number two. And I understand your honor that the result from this hypo is creating an anomalous situation, but that's always the case with equitable tolling. There's always the possibility that some litigant will be treated different under an equitable tolling doctrine because of reasons like efficiency and judicial economy. Um, your honor, if there aren't any further questions on that, um, I would, I would go straight to American pipe tolling and to the question for you. Ah, yes, sir. No, I, I, it's a bit confusing. So I want to see, and I think I understand judge Greenaway's point, which I think is a valid point. So if a statute of repose is about to expire, but certification hasn't been determined, so class members will necessarily, they want to file an individual complaint to, to protect your rights. But if they do so after a two year statute of limitations, we'd have to find the claims untimely. So what's your plaintiffs do in a position like that? Are they, I mean, are they without any recourse? So, so that plaintiff again, had a number of for sure. One, they could have relied on the class complaint. Um, you know, that was their obvious option. They could have sought to intervene as an additional class representative. If pre class cert proceedings suggested some deficiency in existing class reps, they could have sought a tolling agreement from the defendants as a number of the opt outs in this valiant case did to protect their ability to file at a later time. There was nothing that prevented them from seeking a tolling agreement or last but not least, as, as 30 or 29 of the, of the opt outs did, they could file a timely individual action and use the docket management tools to stay the action or otherwise reduce costs pre a class certification decision. So they had a number of options that they could have taken in order to, uh, protect their rights going forward. But the facts of this case, your honor show exactly the opposite. This is a plaintiff who comes here two years and six months, at least two years and six months after the filing of the statute of the running of the statute of limitations and says, I can file anytime I want, um, before the running of the statute of propose and the district court. And I think both, and I think the Supreme court as well is concerned about the damage that's doing to the litigants valiant. It's prejudicial to have to keep moving to dismiss, keep doing a new discovery throughout this entire time period. And it also strips the district courts of their ability to manage these cases, you know, 37 opt outs to manage 37 opt outs along with the class action. Well, here's, here's the point though. What, what are we to do with the tension between China agritech and AZN? And that's the point I think that, uh, judge Fuentes was getting What is plaintiff number two supposed to do, right? Plaintiff number two, uh, has got a file because they're worried about the statute of repose and AZN is very clear that American pipe shouldn't be interpreted as extending the, the, uh, of the statute of repose. A plaintiff number two in that hypothetical, um, uh, is a class member will have to participate in the class action portion of the proceedings and receive their recovery. If there is any recovery from that class action, they're not totally out of luck. They would just participate in the class, um, in the class action rather than have their own, um, their, their own action. And I don't think, uh, you know, reading China agritech and reading A and Z, I don't think the court, uh, uh, would seize attention, uh, in that because these plaintiffs had options that they chose not to avail themselves of, um, and therefore will remain in the class. Don't you agree that neither A and C or China agritech actually addressed the question now before us? Uh, yes, your honor. I, they don't, uh, address the precise question that's before the court. Certainly not. What they do address is a narrowing of the American pipe tolling doctrine. I think it's clear in both cases that the Supreme court is telling us that the American pipe tolling doctrine is a form of equitable tolling that that's certainly, um, uh, the A and Z case, and it rejects outright the suggestion that appellants have made, um, that it does not involve tolling in that the filing of a class action complaint brought the, uh, the petitioner's individual action within the statutory timeframe. And then you layer onto it, the China agritech, uh, decision where the court confirms that American pipe tolling is really about the watchwords, efficiency, and economy of litigation. And in China agritech, the court is saying, uh, you've got a two-year statute of limitations. You've got to file in that two-year limitate statute of limitations. And if you don't, um, then you haven't preserved your rights because American pipe tolling. Well, how are, uh, plaintiffs and amigas attacking A and Z itself? Uh, don't you, don't you, doesn't your argument actually rely on the applicability of the statute of repose as distinguished from the tolling separate statute of limitations within the repose period itself? Yeah. Uh, yes, your honor. We would say, we would say this, the statute of limitations is two years when that runs, that runs the only tolling. And there's a statute of proposed that's five years when that runs, it runs the only tolling, um, that, that should be done. And I think this is, this is very clear, um, in, in both A and Z and China agritech is, is for punitive class members who wish to sue individually after our class certification denied. If we go back to American pipe tolling, what American is a class member who has no rights because class certification is denied. Right. And, and that's what the American pipe tolling court was telling us. We should be careful about now Congress in its wisdom has decided for securities case to have a for securities cases to have a statute of repose. And he tells us that statute of repose five years in a securities case is not subject to total. You mentioned class certification was denied. I can't, you apply American pipe to pre-certification claims where class certification. I'm sorry. Go ahead. I didn't realize you were, you weren't finished. Yeah. Um, no, I was wondering if applying, it seems to me that applying American pipe to pre-certification claims is supported and it's supported by, by class certification. The second, the ninth and the 10th circuits, your honor ruled prior to ANZ and, and, and, um, China agritech. And I would say on that front, there was a real tension between the second, ninth and 10th circuit rulings and China agritech and ANZ. And here's why I would say that the leading case amongst those circuits is the, is the WorldCom case. Uh, and the, and the ninth and the 10th follow WorldCom. The second circuit in WorldCom reason that the, that claims such as those brought by the appellants were timely because it viewed American pipe as establishing a legal rule that members of asserted classes are treated for limitations purposes as having instituted their own actions. And we know from, from, uh, ANZ and China agritech that that rationale, um, is not correct. The Supreme court has said the opposite. The WorldCom court also emphasized that efficiency concerns were quote besides the point. Um, and I think it's clear in China agritech that the Supreme court is rejecting the notion that, um, uh, efficiency concerns are beside the point because the court, uh, very, very clearly told us, um, it focused on efficiency and economy of litigation that told us quote, economy of litigation favors delaying individual claims. And then here's the key language until after a class certification denial, uh, because that's what American pipe was after. Okay. Thank you. Yes, your honor. Uh, judge count. Do you have anything further, sir? Uh, judge one days. I'm good. Thank you. No. Okay. Uh, council. Thank you very much. And, uh, uh, Mr. Todd, I believe you have two minutes. Yes, your honor. Thank you very much. Uh, just very briefly, I think, um, judge green away your question about the hypothetical situation and the plaintiff one plaintiff to plaintiff three is absolutely dead set on point. Um, the Supreme court has specifically said that there is no distinction to be made between plaintiffs two and three in the hypothetical that, uh, your honor, um, presented. Um, and that's clear in China agritech because if you look, if you look at China agritech, the court says this, that after it's a and Z decision, um, whole large, a large number of opt-outs were filed. And this is what the Supreme court said about those opt-out decision, uh, opt-out lawsuits. It says quote between dozens and hundreds of class plaintiffs filed protective individual claims while class certification motions were pending in securities cases. And the statute of repose was about to run out. The Supreme court didn't refer to those cases and say, Oh my God, those places were all doomed. The minute they filed pre-class certification, the Supreme court noted, uh, observed this and said, and made no comment about the, the viability of these cases to be filed pre-class certification. That's the first point. And judge Greenaway, your second, your, your further question was why should a plaintiff three be in a better position than plaintiff to plaintiff three has just sat there all along done nothing. And plaintiff two, at least has taken some action. And that's exactly the point made by the second circuit in WorldCom. The second circuit said that if, um, if, and I'll quote again, if class members who do not file suit while the class action is pending, cannot be accused of sleeping on their rights, then the same quote is certainly true of class members who do file individual suits before the court decides class certification. So at that goes. So let me just ask this one question because I'm, I'm, uh, I'm, I'm really not clear on this. So I'm, I'm plaintiff number three, right. In the hypothetical, um, uh, ANZ says, uh, the statute of repose can't be extended. I just, I just sit because I've looked at the cases and I've been advised to sit. That means, excuse me, if I jump in as an individual after the class certification, but the five years has run, I'm out of, uh, I'm out of luck. Correct. You're on it. That's absolutely correct. And that's the unfairness of requiring plaintiffs. I'm so sorry. You have to repeat yourself because you're kind of frizzing out. Sorry. I'm sorry. Um, and, and that's exactly correct. What you want to just say is exactly correct. The statute of repose would have run on their claims and all those plaintiffs who were sitting there waiting for a class certification decision would have all right. Thank you very much counsel. Judge Fuentes. Do you have another question, sir? No, thank you. I'm fine. I'm sorry. Did you say nothing? Oh yes. Uh, no, I said, thank you. I'm fine. I have no further questions. Okay. Thank you so much. And judge Cowan, do you have anything further please? No, I have nothing further. All right. Well, uh, counsel, uh, thank you all very much for your, um, spirited arguments. Uh, we'll take this matter under advisement and I wish you and your family the best during this global pandemic. Thank you very much.